UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

CIVIL ACTION NO. 1:12-CV-00038-JHM

DEWAYNE ANTHONY POYNTER                                         APPELLANT

V.

GREAT AMERICAN INSURANCE COMPANY                                APPELLEE

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon an appeal from Bankruptcy Court. The Appellant argues that the Bankruptcy Court erred when it granted Great American Insurance Company's motion for summary judgment. Fully briefed, this matter is ripe for decision. For the following reasons, the Court **AFFIRMS** the decision of the Bankruptcy Court.

### I. BACKGROUND

Great American Insurance Company ("GAIC") provides performance and payment bonds on public construction projects. Poynter Construction, owned solely by Dewayne Anthony Poynter, was required to obtain performance and payment bonds in order to enter into certain contracts on public commercial projects. Poynter and GAIC entered into an Agreement of Indemnity ("AOI") in 2007 in order to induce GAIC to act as surety for Poynter Construction. The fourth paragraph of the AOI states:

> FOURTH: Undersigned covenant and agree that all funds received by them, or due under any contract covered by any Bond are trust funds whether in the possession of the Undersigned or another, for the benefit of all parties to whom the Undersigned incurs obligations in the performance of the contract covered by the Bond(s) and/or for the benefit of, payment to or reimbursement of the Surety for any liability, loss or expense the Surety may incur under the Bond(s) or in enforcing this Agreement. If the Surety discharges any such obligation, the Surety shall be entitled to assert the claims of any such party to the trust funds . . . . Notwithstanding anything to the contrary herein above this dedication may be implemented in any other manner

provided at law or in equity."

GAIC and Poynter Construction entered into several performance bonds and GAIC required Poynter Construction to be capitalized in certain amounts for each construction project before issuing the bonds. Poynter provided GAIC with financial statements as requested to show the capital of Poynter Construction. In December of 2008, GAIC demanded that Poynter Construction have capital of no less than $1 million to meet Poynter Construction's bonding requirements for a particular project. Poynter wrote a check for $1 million to Poynter Construction, which was funded by a loan to Poynter by PBI Bank. In reliance on this loan and Poynter Construction's financial statements, GAIC wrote bonds for the project. The $1 million loan from PBI Bank was never released, however, and was placed in a blocked account. Poynter used those funds to repay the loan on January 20, 2009, prior to the maturity date of the loan. GAIC was unaware that Poynter Construction never received the funds.

Poynter Construction was unable to finish three construction projects, the Barren/Metcalfe County EMS project, the City of Oak Grove project, and the Caverna Independent School project. Under the bonds, GAIC paid to have the projects completed and incurred a loss of $7,001.00 on the Barren/Metcalfe County EMS project; a loss of $644,071.01 on the City of Oak Grove project; and a loss of $145,908.50 on the Caverna Independent Schools project. GAIC incurred attorneys' fees and costs of $43,646.18 but was able to recover $196,716 of unpaid contract funds for a total loss of $600,210.01.

Poynter Construction records indicate that Poynter Construction received payments in total of $2,502,209 for the three bonded projects. The payments were not held in trust, and $1,351,788.45 was paid to Poynter Homes and PBI Bank.

2

On October 22, 2010, Poynter filed a Voluntary Petition seeking relief under Chapter 7 of the United States Bankruptcy Code. On January 18, 2011, GAIC instituted a proceeding against Poynter in order to have his debt to GAIC declared non-dischargeable under 11 U.S.C. § 523(a)(4). The parties conducted discovery and GAIC filed a motion for summary judgment arguing, that as a matter of law, Poynter's debt to GAIC was non-dischargeable. The Bankruptcy Court granted the motion for summary judgment and Poynter appeals.

## II. STANDARD OF REVIEW

A federal district court has jurisdiction to hear appeals from "final judgments, orders, and decrees" of the bankruptcy court. 28 U.S.C. § 158(a). On appeal, a district court reviews the bankruptcy court's finding of fact under a clearly erroneous standard, but reviews de novo the bankruptcy court's conclusions of law. Nicholson v. Isaacman (In re Isaacman ), 26 F.3d 629, 631 (6th Cir. 1994). In his brief, Poynter states that most, if not all the facts are undisputed. Therefore, the Court will review de novo the bankruptcy court's conclusions of law.

## III. DISCUSSION

Under section 523(a)(4), "A discharge under Section 727 . . . of this title does not discharge an individual debtor from any debt . . . (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny[.]" In its motion for summary judgment, GAIC argued that, pursuant to 11 U.S.C. 523(a)(4), it was entitled to judgment as a matter of law based on Poynter's failure to hold payment of bonded contract funds in trust in accordance with the terms of the trust agreement in the AOI. The bankruptcy court agreed and held that Poynter's defalcation of trust funds made the debt non-dischargeable. Upon appeal, Poynter argues that 11 U.S.C. 523(a)(4) does not apply since no express or technical trust was created.

**A. Defalcation under 11 U.S.C. § 523(a)(4)**

"'Defalcation,' as used in the context of § 523(a)(4), 'refers to a failure to produce funds entrusted to a fiduciary and applies to conduct which does not necessarily reach the level of 'fraud,' or 'embezzlement' or 'misappropriation,'" In re Sigler, 196 B.R. 762, 764 (Bankr. W.D. Ky 1996) (citing Collier's on Bankruptcy, 523,14[1][b] at 523-111 (15th Ed. 1995)).  The definition includes deficits "which result from the breach of a fiduciary duty, even if the breach was neither intentional nor committed in bad faith." In re Smith, 238 B.R. 664, 670 (Bankr. W.D. Ky. 1999).  The Sixth Circuit has held that, defalcation under § 523(a)(4) is "limited to only those situations involving an express or technical trust relationship arising from placement of a specific res in the hands of the debtor." In re Garver, 116 F.3d 176, 180 (6th Cir. 1997).  In order to establish a claim, a surety must demonstrate "(1) the existence of a trust, either express or statutorily created; (2) the debtor owed a fiduciary obligation with relation to that trust; and (3) the debtor breached his or her fiduciary duty by either misappropriating the trust res or by simply failing, intentionally or unintentionally, to properly account for the trust res." Smith, 238 B.R. at 670.  Under Kentucky law there are four required elements of an express trust: "(1) an express intent to create a trust; (2) an ascertainable res; (3) a sufficiently certain beneficiary; and (4) a trustee who owns and administers the res for the benefit of another (the beneficiary)." Id. at 670-71 (citing Frazier v. Hudson, 130 S.W.2d 809, 810 (Ky. 1939)).

**B. Existence of a Trust**

Poynter argues that in the case at present, no express trust or statutory trust was created.  The language in the AOI is a standard, boiler plate agreement, Poynter states, and the fourth paragraph is the only provision that would imply a trust.  Poynter contends that the AOI established only a

contractual relationship, not a fiduciary relationship, and the reference to a trust in a paragraph in the AOI alone does not create a trust.

In response, GAIC argues it has demonstrated all four elements of a trust were in existence for a claim under section 523(a)(4). GAIC states that the AOI created an express trust with the intent that all bonded contract payments were to be held and used to pay the particular bonded job creditors or GAIC; the res was designated as the funds paid to Poynter Construction on the contracts for which GAIC issued bonds; Poynter, the debtor, is the indemnitor and designated trustee; and the beneficiaries are designated as the job creditors and the surety, GAIC. It points to the Restatement (Second) of Trusts § 26, Comment l, which states that "[i]f a person manifests an intention to become trustee at a subsequent time, his silence at that time considered in connection with his original manifestation may be a sufficient manifestation of intention at that time to create a trust. Mere silence, however, ordinarily will not be such a manifestation. Whether silence is or is not such a manifestation is a question of interpretation." GAIC reasons that Poynter continued to accept the benefits of GAIC issuing bonds for Poynter Construction and received progress payments on the projects at issue, therefore manifesting a continued intent in favor of GAIC to create the trust.

There are three cases the parties discuss that the Court finds instructive as to whether the AOI created an express trust. First, in <u>Federal Insurance Co. v. Fifth Third Bank</u>, the Sixth Circuit held that a provision in a contract between the State of Ohio and Becker Electric Company (with Federal Insurance as the surety) created an express trust. 867 F.2d 330, 334 (6th Cir. 1989). In the contract with Becker, the State of Ohio required that "[a]ll monies paid on account to any contractor for materials or labor shall be regarded as fund [sic] in his trust for payment of any and all obligations relating to this contract and no such amount of monies shall be permitted to accrue to

5

the contractor until all such obligations are satisfied." Id. at 332. When Becker abandoned the project it was in agreement with the State to perform, Federal Insurance completed the project and paid all of Becker's job creditors. At the same time, Becker had an outstanding loan with Fifth Third Bank which became immediately due. Fifth Third offset progress payments made by the State of Ohio to Becker, which Federal Insurance argued should have been held in trust for obligations on the project. Under Ohio law, the Sixth Circuit held that an express trust was created by "the contract provision, with the State as settlor, Becker as trustee, the job creditors as beneficiaries and the progress payments as trust funds." Id. at 334. As evidence of the intent to create the trust, the Sixth Circuit looked to the surrounding circumstances, including the language of the contract, the State's intent to impose enforceable duties upon Becker, the restricted use of the payments, and the relationship between the parties. Id.

Similarly, the Bankruptcy Court in In re Smith found express trusts were created by indemnity agreements issued by Cumberland Surety Insurance Co., Inc. and Mountbatten Insurance Co., Inc. 238 B.R. 664 (Bankr. W.D. Ky. July 3, 1999). Both insurance companies had issued surety bonds to T.W. Enterprises, a construction company solely owned by Lawrence Smith and Tim Weathers. T.W. Enterprises was hired as a general contractor for several government construction projects which required T.W. Enterprises to obtain surety bonds. The Cumberland General Agreement of Indemnity, which was governed by Kentucky law, stated:

> [I]t is expressly understood and declared that all monies due and to become due under any contract or contracts covered by the bonds are trust funds whether in the possession of the Indemnitor or Indemnitors or otherwise for the benefit of and for payment of all such obligations in connection with any such contract or contracts for which the surety would be liable under any of said bonds, which said trust also ensures (sic) to the benefit of the surety for any liability or loss it may have to sustain under said bonds, and this agreement and declaration shall also constitute notice of such trust.

6

Id. at 671. The Bankruptcy Court held that the Cumberland General Agreement of Indemnity created an express trust and contained the four requisite elements for the creation of such trust. He stated the agreement clearly expressed the intent to create a trust, the provision designated the surety as a beneficiary, and imposed the duty of holding the designated funds on the indemnitors as trustees. The res was designated as "all monies due and to become due under any contract or contracts covered by the bonds." Id. at 671. The Bankruptcy Court was not persuaded by the debtors argument that since the contract funds were not already paid to T.W. Enterprises, "there was no transfer of a present beneficial interest." Id. at 672. Although it was decided under Ohio law, the court adopted the reasoning in Federal Insurance, noting that the requirements for creating a trust under Kentucky law are substantively the same. Despite the fact that the progress payments "were not actually made to the contractor until a point in time subsequent to the execution of the agreement," the Bankruptcy Court noted that the Sixth Circuit found that the provision clearly designated the trust res and a trust was created. Citing to the Restatement (Second) of Trusts § 26, the court stated that "even if a trust is not immediately created due to its subject matter not being definite or definitely ascertainable, the trust may still subsequently arise when its subject matter does become definite or definitely ascertainable." Id. at 672. Therefore, the Bankruptcy Court determined that the indemnity agreement created an express trust and the debt was non-dischargeable under Section 523(a)(4).

In contrast, Judge Heyburn determined that a trust was not created in Acuity, a Mutual Insurance Company v. Planters Bank, Inc., 362 F.Supp.2d 885 (W.D. Ky, March 28, 2005). In that case, Acuity issued a bond to Star Construction, Inc. for a project Star defaulted on. Meanwhile, Star's bank, Planters, had set off progress payment funds in Star's account to pay off a loan Star

owed Planters. The conflict was between Acuity's rights in subrogation and Planter's rights as creditor over the progress payments. Acuity argued that the funds were held by Star in trust for the benefit of subcontractors and the Bank either knew or should have known this. Id. at 891. Even though in both cases the res was future progress payments, Judge Heyburn distinguished his case from Federal Insurance, by finding a substantive difference between the State of Ohio, as the employer of the general contractor, requiring the future progress payments be held in trust versus Acuity, as surety, requiring the future progress payments held in trust. In addition, the court found the language of the indemnity agreement alone was an insufficient basis to create a trust, as Star engaged in no other actions that indicated its intent to hold the funds in trust. There "was an absence of coincidence between the existence of a trust res and a declaration of intent." Id. at 893.

This Court is persuaded by the reasoning in Federal Insurance and In re Smith, as well as the Bankruptcy Court's distinction of Acuity from the case at present, and holds that an express trust was created. The express intent to create a trust was stated in the AOI, which Poynter signed. While Poynter signed the Agreement of Indemnity prior to engaging in any contracts, the res was ascertainable and clearly stated as "all funds received by them, or due under any contract covered by any Bond." The beneficiaries are the subcontractors, material men and GAIC, stated in the AOI as "all parties to whom [Poynter] incurs obligations in the performance of the contract covered by the Bond(s) and/or for the benefit of, payment to or reimbursement of the Surety for any liability, loss or expense the Surety may incur[.]" Poynter acted as trustee, receiving the funds due under the contracts and holding them as trust funds.

Poynter cites to In re Munson in support of its argument that no trust was created. 2011 WL 845846 (Bankr. C.D. Cal. March 9, 2011). However, that case was decided under California law,

and the court stated it did not need to determine whether a trust was created under the indemnity agreement because the individual debtors were not the alter egos of the defunct corporation.  The Court also finds In re Grant inapplicable to the case at hand. 328 B.R. 728 (Bankr. W.D. Ky. May 3, 2005).  In re Grant was about a floor plan financing agreement in which the court held that the agreement was a contractual obligation, not a fiduciary relationship.  Id at 734.  The Bankruptcy Court held that the words "in trust" in a security agreement were not enough to create a fiduciary relationship, but the court did not go into detail as to which element of an express trust was not present; the express intent, the ascertainable res, a sufficiently certain beneficiary; or a trustee.

Therefore, the Court affirms the decision of the Bankruptcy Court and finds that Poynter's debt is non-dischargeable pursuant to 11 U.S.C. § 523(a)(4).

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the decision of the Bankruptcy Court is **AFFIRMED**.

*Joseph H. McKinley, Jr., Chief Judge*
*United States District Court*

October 15, 2012

cc: counsel of record

    Hon. Joan A. Lloyd
    Clerk, USBC WD/KY